UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
AXELROD & CHERVENY, ARCHITECTS,
P.C., DAVID SALYARDS, ARCHITECTS
GROUP INC., COUNTRY VIEW PROPERTIES
DEVELOPMENT CORP., and WINDING WOOD,
INC.,

                Plaintiffs,                  **MEMORANDUM & ORDER**

      -against-                       05 Civ. 5573 (DRH) (MLO)

T. & S. BUILDERS INC., SALVATORE
MALGUARNERA and RED BARN ESTATES,
LLC,

                Defendants.
----------------------------------------------------------------X
**APPEARANCES:**

**MILBER MAKRIS PLOUSADIS & SEIDEN, LLP**
Attorneys for Plaintiffs
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
By: Thomas M. Fleming, Esq.

**SCHEYER & JELLENIK, ESQS.**
Attorneys for Defendants
110 Lake Avenue South, Suite 46
Nesconset, New York 11767
By: Stephen R. Jellenik, Esq.

**HURLEY, Senior District Judge:**

INTRODUCTION

        Plaintiffs Axelrod & Cherveny Architects, P.C. ("Axelrod'), David Salyards

("Salyards"), Architects Group Inc. ("AGI"), Country View Properties Development Corp.

("Country View"), and Winding Wood, Inc. (collectively, "Plaintiffs") filed the present action

against defendants T. & S. Builders Inc. ("T&S"), Salvatore Malguarnera ("Malguarnera"), and

Red Barn Estates, LLC. ("Red Barn") (collectively, "Defendants") alleging, inter alia, that

Defendants infringed upon the copyrights of Axelrod and Salyards by designing, marketing, constructing, and selling four homes under the model name the "Franklin" that were substantially similar to Plaintiffs' copyrighted architectural designs, known as "Home Design 2434" and the "Georgetown II." Axelrod and Salyards have moved for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 as to Counts I, II, III, and V of the Amended Complaint. For the reasons that follow, their motion is denied pending further briefing.

## BACKGROUND

### I. *Plaintiffs' Statement of Material Facts Will be Deemed Admitted to the Extent Supported by the Record*

In support of their motion, Plaintiffs, as required, submitted a Local Rule 56.1 Statement, setting forth in numbered paragraphs the material facts as to which Plaintiffs contend there is no genuine issue to be tried, together with citations to the record. In opposing Plaintiffs' motion, it was Defendants' obligation to submit a counter 56.1 Statement including "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of [Plaintiffs], and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." Local Civil Rule 56.1(b). Defendants' counter-statement fails to comply with this requirement in that it fails to specifically respond to each of Plaintiffs' numbered paragraphs. Instead, Defendants' Statement merely sets forth its own paragraphs which bear no relation to those of Plaintiffs. Under these circumstances, the facts set forth in Plaintiffs' Rule 56.1 Statement will be deemed admitted to the extent they are supported by the record. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails

to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) (noting that factual assertions set forth in unopposed 56.1 Statement must be supported by the record).

## II.     *Factual Background*

The following facts are undisputed and supported by the record, unless noted. Salyards is a principal of AGI, an architectural firm.  In 1992, Salyards prepared a design for a residential home known as "Home Design 2434."  On November 14, 2003, Salyards was issued a Certificate of Registration for Home Design 2434 by the United States Copyright Office.

In 2000, Country View, a real estate developer, retained Axelrod, an architectural firm, to design a derivative work of Home Design 2434.  With Salyards' consent, Axelrod designed a derivative work of Home Design 2434, know as the Georgetown II, and registered the work with the United States Copyright Office.  The Copyright Office issued a Certificate of Registration for the Georgetown II to Axelrod effective December 15, 2004.

With the consent of Axelrod, Salyards, and AGI, Country View created an advertising brochure to market the Georgetown II (the "Georgetown II Brochure"), which contains, inter alia, an artist's rendition of the exterior of the home as well as a two-page floor plan for the design of the interior.  The Georgetown II was honored in 2002 by the Long Island Builders Institute and was presented the Diamond Award for single family detached homes.

Defendant T&S is in the business of building residential homes.  Defendant Malguarnera is the president of T&S.  Defendant Red Barn is a limited liability company

engaged in the construction of one-family dwellings. Red Barn provides funds to T&S so that T&S can purchase land to build homes upon.

Plaintiffs allege that Defendants illegally copied the Georgetown II design for use in connection with the construction of four homes under the model name the "Franklin" on Long Island, without Plaintiffs' permission. It is undisputed that T&S used sales literature to market the Franklin model. These advertisements contain a copy of the first page of the Georgetown II brochure, displaying the exterior of the Georgetown II and actually referring to the Franklin as the Georgetown II, with the name "Country View" removed.

In addition, one of the Franklin flyers includes the two-page floor plan from the Georgetown II Brochure. Another depicts a floor plan which is nearly identical to the floor plan for the Georgetown II, absent two modifications, i.e., the lavatory on the first floor in the Georgetown II is situated differently than in the Franklin, and the Georgetown II second floor plan includes one walk-in closet, while the Franklin plan calls two. Otherwise, the two floor plans are identical.

Defendants T&S and Red Barn ultimately constructed four Franklin homes, three of which Defendants built and sold pursuant to three separate contracts of sale. The fourth home was completed for Salvatore Malguarnera, Jr., the son of defendant Salvatore Malguarnera.

Count I alleges that "Defendants designed, constructed, advertised, marketed and sold a [Franklin] home using the illegally duplicated Georgetown II Design" on Frog Pond Road in Huntington, New York. (Am. Compl. ¶ 35.) T&S entered into a contract of sale in which it agreed to build this home for Shah Yasofi and Naimh Sana. The contract includes an exact copy of the two-page floor plan for the Georgetown II, copied from the Georgetown II Brochure. The

only difference between the two floor plans is that the one included in the T&S contract contains some handwritten notes.

Count II alleges that "Defendants designed, constructed, advertised, marketed and sold a [Franklin] home using the illegally duplicated Georgetown II Design" on 19 Oak Run, Nesconset, New York.  (*Id.* ¶ 44.)  Red Barn entered into a contract of sale in which it agreed to build this home for Mark Berutich and Barbara Berutich.  This contract also includes the two-page floor plan taken right out of the Georgetown II Brochure.  However, it also includes separate floor plans, incorporating modifications to the Georgetown II design, discussed *infra*.

Count III alleges that "Defendants designed, constructed, advertised, marketed and sold a [Franklin] home using the illegally duplicated Georgetown II Design" on 21 Oak Run, Nesconset, New York. (*Id.* ¶ 53.)  Red Barn entered into a contract of sale in which it agreed to build this home for Phil D'Amelia.  The contract includes a copy of the front page of the Georgetown II Brochure, displaying a picture of the exterior of the Georgetown II home, with the name "The Georgetown II" on it.  Country View's name is blocked out, although its logo still appears.  The contract also includes the two-page floor plan for the Georgetown II which was copied from the Georgetown II Brochure.  On this floor plan are some handwritten additions.  In addition, the contract includes additional floor plans with modifications to the Georgetown II design, discussed *infra*.

Count V alleges that "Defendants design[ed], construct[ed], advertis[ed], markete[d ] and offer[ed] for sale [a Franklin] home using the illegally duplicated Georgetown II Design" on Park Avenue, Huntington, New York.  (*Id.* ¶ 71.)  This house was first commissioned by William Lauderbach, a prospective customer of T&S and the person who first provided T&S

with the Franklin design.  Defendants contend that the Franklin plans were drawn by Mr.

Lauderbach's architect, Robert O'Shea.  Shortly after the commencement of construction,

however, Mr. Lauderbach cancelled the contract and the project was completed for

Malguarnera's son.  Thus, there is no contract of sale in connection with his home and no floor

plan has been proffered.  However, there is an undisputed photo of the exterior which is very

similar to that of the Georgetown II.

Louis Castellano ("Castellano"), a field supervisor for T&S, has submitted an

affidavit in which he asserts that the "as built" plans for Malguarnera's son's home

> show over thirty-fI've (35) modifications from the original plan,
> including, but not limited to, the addition of a sun room which
> changed the footprint of the house, the elimination of one of the
> garages and conversion to living space, the addition of a room
> behind the garage, which again expand the footprint of the house, a
> third full bathroom, the addition of a second floor deck, substantial
> modifications of the kitchen, and the subsequent modification of
> the family room, including the locations of windows and
> doorways, expansion and modification of the master bedroom and
> bath area and the modification of the outside facia of the house.

(Castellano Aff., dated Oct. 23, 2007 ("Castellano Aff."), ¶ 4.)  Castellano's deposition

testimony is consistent with his affidavit with regard to the alleged modifications to this home.

(Decl. of Thomas M. Fleming II, dated Aug. 21, 2007, Ex. G at 41-42.)[1]  No "as-built" plans for

this home have been proffered by Defendants.

---

[1] In addition, Malguarnera testified at his deposition that he saw his son's home
completed and that it contained "numerous changes" including "[a] sunroom in the back, a porch
off the master suite[,] . . . a double-sided fireplace[,] [c]hanged the garage for more living
space[,] a one-car garage," brick on the exterior and a lot of "interior changes."  (Decl. of
Thomas M. Fleming II, dated Aug. 21, 2007, Ex. H at 23-24.)

Castellano also contends that "[a]ll of the four homes constructed by the defendants under the model name 'Franklin' are substantially different from each other" and that "[t]he changes and modifications in these models included, but were not limited to, the addition of rooms, the rearrangement of basic floor plans, changing of facia, the relocation of kitchens and changes in kitchen layouts, the addition and change of location of bath rooms and other substantial modifications." (Castellano Aff. ¶ 6.) He claims that "[i]t is a common practice in the construction industry to obtain copies of model brochures from competitors [but that] these brochures are used for reference only and it has never been the practice of the defendants to copy a competitor's model." (*Id.* ¶ 7.)

At his deposition, Castellano was asked to identify the alleged modifications to each of the four Franklin models and was asked how the changes were decided upon. He responded that the changes were "options" that were "made by the customers" (Decl. of Thomas M. Fleming II, dated Aug. 21, 2007, Ex. G at 43), and proceeded to describe the modifications in the homes as-built. With regard to the Franklin home on Frog Pond Road, he stated that "[t]hey added an outside entrance [and] relocated some walls in the bathroom." (*Id.* at 42.) He pointed to a page of the contract for sale which contained the floor plan for the Georgetown II with some handwriting on it. (*Id.* at 60.) He identified the handwriting as his own and explained that it indicated that the customer modified the plan to add a two-by-six wall and an extra room. He also indicated other changes which are not reflected in the contract. (*Id.* at 62.)[2]

---

[2] From the Court's review, this home appears to contain the least amount of changes from the Georgetown Design. Malguarnera's testimony concurs with this result. (*See* Decl. of Thomas M. Fleming II, dated Aug. 21, 2007, Ex. H at 31.)

With respect to the Franklin home on 19 Oak Run, Castellano explained that the handwriting on the last page of the contract of sale for this home was his own and that it demonstrated the following modifications: "modification of the kitchen layout, the window layout, the sink, the stove, the cabinets, added a room on, added a bathroom, relocate[d] the laundry room, [and] added closets." (*Id.* at 61.) Without referencing the contract, he noted that other changes were made as well, including the addition of an outside entrance and a modification of the fireplace locations. (*Id.* at 42.)

Finally, as for the Franklin home on 21 Oak Run, Castellano examined the contract of sale and explained that it contained the following modifications to the floor plan: "the downstairs kitchen layout, the closet layout, the garage hallway layout, the laundry room layout, the bathroom layout, an extra room [and] extra windows." (*Id.* at 59.) He also noted that the purchasers changed the "kitchen around," added a sitting room in the master bedroom, added windows, changed closets and changed the bathroom layouts." (*Id.*) Without referencing the contract, he added that the purchasers added an in-home office and a second story balcony. (*Id.* at 43.)

Neither side has proffered to the Court the as-built plans for any of the homes. However, the record includes the undisputed photographs of all four Franklin homes, which are all very similar to the exterior of the Georgetown II.

T&S received a cease and decease letter on behalf of the Plaintiffs in the Summer of 2004. Thereafter, T&S cancelled construction of five additional Franklin model homes and removed all sales literature in connection with it from its office. When asked if there was any reason to stop selling the Franklin after receipt of Plaintiffs' cease and desist letter, Malguarnera

testified at his deposition that "[t]here would be no reason to [stop selling the Franklin]. . . . Everybody is building everybody else's house out there . . . ."  (Decl. of Thomas M. Fleming II, dated Aug. 21, 2007, Ex. H at 15.)

## DISCUSSION

### I.      *Standard of Review and Applicable Law*

#### A.      *Summary Judgment*

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of

evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

   The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

   Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Board of Elections of the City of New York*, 224 F.3d 149, 157 (2d. Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v.*

*Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

**B.     Architectural Works Copyright Protection Act**

Under the Copyright Act, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). The Architectural Works Copyright Protection Act (the "AWCPA") was enacted in 1990 and extends copyright protection to architectural works. *See id.* § 102(a)(8). An architectural work is "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include the individual standard features." *Id.* § 101. "Under current law, architectural works are generally subject to the same standards as other copyrightable works." *Axelrod & Cherveny Archs., P.C. v. Winmar Homes*, No. 2:05-cv-711,

2007 WL 708798, at *2 (E.D.N.Y. Mar. 6, 2007) (citing *Attia v. Soc'y of the N.Y. Hosp.*, 201 F.3d 50, 53 n.3 (2d Cir. 1999)).

Liability under the AWCPA is not limited to individuals who design the blueprint of a structure. *Id.* at *6. Rather, direct liability extends to builders as well. *Id.* ("The most egregious examples of structural infringement will not involve an infringing architect; they will involve an infringing builder who simply steals an architect's design."). Thus, Defendants, as builders of the Franklin, are subject to liability under the AWCPA.

## C. *Copyright Infringement*

A plaintiff alleging copyright infringement must prove: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work. *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citations omitted). Here, the parties do not dispute that Salyards obtained valid copyrights for Home Design 2434 and that Axelrod obtained valid copyrights for the Georgetown II., a derivative work of Home Design 2434. Therefore, in order to prevail, Plaintiffs must show that Defendants copied their designs.[3]

To prove unauthorized copying of a copyrighted work, a plaintiff must show that: "(1) the defendant actually copied the plaintiff's work; and (2) the copying is illegal because a 'substantial similarity' exists between the defendant's work and the protectable elements of the plaintiff's work." *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) (citations omitted). "Actual copying may be established by direct or indirect evidence." *Jorgensen*, 351 F.3d at 51 (citation and internal quotation marks omitted). "Because direct

---

[3] It is also undisputed that Defendants did not have Plaintiffs' permission to copy Plaintiffs' design.

evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendants work had access to the copyrighted material and that there are similarities between the two works that are probative of copying." *Id.* (internal citations and quotation marks omitted); *see also Streetwise*, 159 F.3d at 747. "The similarity inquiry used to indirectly establish copying is referred to as *probative* similarity and is somewhat akin to, but different than, the requirement of substantial similarity that must be shown to prove copyright infringement." *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir. 2006) (citation and internal quotation marks omitted).[4]

"Given the obvious fact-based nature of this inquiry, a grant of summary judgment on a claim of copyright infringement is exceedingly rare." *Axelrod*, 2007 WL 708798, at *8. "A plaintiff must show that no reasonable trier of fact could find against it on any of the elements of proof, the most challenging of which may be proof of substantial similarity." *Id.* "Because substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation." *Hoehling v. Univ. City Studios, Inc.*, 618 F.2d 972, 977 (1980).

"Nevertheless, summary judgment remains available and is appropriate where the degree of substantial similarity is overwhelming." *Axelrod*, 2007 WL 708798, at *8 (citation

---

[4] "Copyright case law has caused considerable confusion by the use of the term 'substantial similarity' at two different points of the copyright infringement analysis." *Repp v. Webber*, 132 F.3d 882, 889 n.1 (2d Cir. 1997). "In an effort to clarify this confusion, [the Second Circuit] ha[s] noted that the term 'probative similarity' should be used when referring to the initial burden of proving copying by establishing access and/or similarities. After a plaintiff has proved copying, he must then show that the copying was unlawful by establishing 'substantial similarity' between the works at issue." *Id.* (internal citation and quotation marks omitted).

omitted). In the architectural realm, district courts have been willing to grant summary judgment to plaintiffs where "no doubt exists that the offending structure is a knock off." *Id.* (citing *Nilson v. McGlaughon*, No. 02-cv-54, 2004 WL 906322 (E.D.N.C. Mar. 19, 2004) and *Bonner v. Dawson*, No. 502-cv-00065, 2003 WL 22432941 (W.D. Va. Oct. 14, 2003)).

## II. Whether Defendants Infringed on Plaintiffs' Copyrighted Designs

### A. Defendants Actually Copied Plaintiffs' Designs in Their Advertisements and Contracts

The first element of a copyright infringement claim is that the defendant actually copied the plaintiff's work. As noted above, actual copying may be established through direct or indirect evidence. Here, Plaintiffs have direct evidence of copying. It is undisputed that Defendants attached Georgetown II sales literature, including pictures of the Georgetown II's exterior as well as its floor plans, to both Defendants' advertising flyers and to three contracts of sale for the Franklin. The included sales literature actually states, albeit in very small writing, that "all floor plans and elevations are copyrighted," referring to *Plaintiffs'* copyrights. With regard to the Franklin home for which there is no contract of sale, the evidence undisputedly indicates that Defendants used the Georgetown II design to design and market this home. When the prospective purchaser then cancelled the contract, the house was subsequently completed for Malguarnera's son. Accordingly, the Court finds that Plaintiffs have established that Defendants actually copied Plaintiffs' architectural designs in their advertisements and contracts of sale.

### B. Substantial Similarity

Because Plaintiffs have demonstrated their ownership in valid copyrights and Plaintiffs' copying, summary judgment turns on the issue of substantial similarity. In fact,

-14-

Defendants' opposition to the instant motion is primarily limited to this question.[5]  Essentially,

Defendants argue that there is a genuine issue of material fact as to whether the four Franklin

homes were substantially similar to the Georgetown II because "[i]n their final form none of the

four examples resembled the Georgetown II, nor indeed each other."  (Defs.' Mem. at 3.)

"[T]he test for substantial similarity is the 'ordinary observer test,' which queries

whether an average lay observer would recognize the alleged copy as having been appropriated

from the copyrighted work."  *Hamil Am., Inc. v. GFI Inc.*, 193 F.3d 92, 100 (2d Cir. 1999)

(citations omitted).  "[T]he ordinary observer test is whether 'the ordinary observer, unless he set

out to detect the disparities, would be disposed to overlook them, and regard their aesthetic

appeal the same.'"  *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487,

489 (2d Cir. 1960)).  A court must consider similarity in light of "the total concept and feel" of

the works.  *See Boisson v. Banain, Ltd.*, 273 F.3d 262, 275 (2d Cir. 2001); *see also Axelrod*,

2007 WL 708798, at *13 ("The factfinder must look at the work as a whole without

dissection."); *Shine v. Childs*, 382 F. Supp. 2d 602, 612 (S.D.N.Y. 2005) (noting that "total

concept and feel" is the dominant standard by which courts in the Second Circuit evaluate

similarity in copyright infringement cases).

Here, Defendants' design is substantially similar to Plaintiffs' as embodied in

Defendants' advertising flyers and contracts for sale.  In fact, in some cases, they are identical.

Moreover, the exterior facades of the four Franklin homes are substantially similar to the exterior

---

[5]  Defendants' only other argument is that they did not believe that the Franklin was a
copy of the Georgetown II.  Defendants' reliance on a claimed lack of intent – or, in other words,
an "innocent infringer" defense – does not bar a finding of infringement.  *See Fitzgerald Publ'g
Co. v. Baylor Publ'g. Co.*, 807 F.2d 1110, 1113 (2d Cir. 1995) ("Even an innocent infringer is
liable for infringement.").

facades of the Georgetown II, as evidenced by the photographs thereof.  However, based upon the present record, the Court is unable to determine what modifications were in fact made to the interiors of the Franklin homes upon completion.  Although Plaintiffs make much of the fact that Defendants have failed to proffer the "as-built" designs for the four Franklin homes, two of the contracts include not only replicas of the Georgetown II floor plans, but also contain additional floor plans incorporating changes to the Georgetown II design, suggesting that changes were in fact made to the homes upon construction.  In addition, Castellano, a field supervisor for T&S, has testified that substantial modifications were made to all four of the homes as-built.  Although the Court is dismayed, to say the least, that Defendants have failed to submit the floor plans for the completed homes, the Court finds that, based upon the present record, there are genuine issues of material fact as to whether the changes were actually made.

This does not end the Court's analysis, however, but rather leads to further questions that are not addressed by the parties in their briefs.  First, although case law instructs that in analyzing substantial similarity, the Court must look at the work as a whole, does that mean that Defendants' act of copying the exterior of the Georgetown II may not constitute an act of infringement if Defendants made substantial modifications to the interiors of the Franklin homes.  Second, does Defendants' use of the Georgetown II Brochure in its advertisements and contracts of sale, in and of itself, constitute an act of infringement under the Copyright Act.  In this regard, the Court notes that the Counts upon which Plaintiffs seek summary judgment are not predicated solely on Defendants' construction of the Franklin homes.  Instead, they allege that Defendants "designed, constructed, advertised, marketed and sold" Franklin homes using the illegally duplicated Georgetown II design.  Plaintiffs' motion, however, does not distinguish

between the five allegedly infringing acts but rather seeks judgment generally based upon Defendants' alleged infringement.

Accordingly, Axelrod's and Salyards' motion for partial summary judgment is denied pending the receipt of further briefing on these issues. Plaintiffs shall serve and file a memorandum of law, not to exceed ten pages, on or before August 27, 2008; Defendants shall serve and file a memorandum in opposition, not to exceed ten pages, on or before September 17, 2008; and Plaintiff shall serve and file a memorandum in reply, not to exceed five pages, on or before September 29, 2008. The briefs shall contain citations to controlling authority.

## CONCLUSION

For the foregoing reasons, Axelrod's and Salyards' motion for summary judgment as to Counts I, II, III, and V is denied pending the receipt of further briefing as set forth above.

**SO ORDERED.**

Dated: Central Islip, New York
     August 6, 2008                              _____/s/_____
                                             Denis R. Hurley
                                             Unites States District Judge