UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
AXELROD & CHERVENY, ARCHITECTS,
P.C., DAVID SALYARDS, ARCHITECTS
GROUP INC., COUNTRY VIEW PROPERTIES
DEVELOPMENT CORP., and WINDING WOOD,
INC.,

                Plaintiffs,                **MEMORANDUM & ORDER**
    -against-                                   05 Civ. 5573 (DRH) (ARL)

T. & S. BUILDERS INC., SALVATORE
MALGUARNERA and RED BARN ESTATES,
LLC,

                Defendants.
-------------------------------------------------------------------X

**APPEARANCES:**

**MILBER MAKRIS PLOUSADIS & SEIDEN, LLP**
Attorneys for Plaintiffs
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
By: Thomas M. Fleming, Esq.

**SCHEYER & JELLENIK, ESQS.**
Attorneys for Defendants
110 Lake Avenue South, Suite 46
Nesconset, New York 11767
By: Stephen R. Jellenik, Esq.

**HURLEY, Senior District Judge:**

      Plaintiffs Axelrod & Cherveny Architects, P.C. ("Axelrod"), David Salyards

("Salyards"), Architects Group Inc. ("AGI"), Country View Properties Development Corp.

("Country View"), and Winding Wood, Inc. (collectively, "plaintiffs") commenced this action

against defendants T. & S. Builders Inc. ("T&S"), Salvatore Malguarnera ("Malguarnera"), and

Red Barn Estates, LLC. ("Red Barn") (collectively, "defendants") alleging that defendants, *inter*

*alia*, infringed upon the copyrights of Axelrod and Salyards by designing, marketing,

constructing, and selling four homes under the model name "the Franklin" that were substantially similar to plaintiffs' copyrighted architectural designs known as "Home Design 2434" and the "Georgetown II." Axelrod and Salyards moved for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 as to Counts I, II, III, and V of the Amended Complaint. In a Memorandum & Order dated August 26, 2008 (the "August 26 Order"), the Court directed the parties to submit supplemental briefing on two issues, as described *infra*. Having reviewed the parties' supplemental briefs, and for the reasons set forth below, plaintiffs' motion is granted.

## *BACKGROUND*[1]

Salyards and Axelrod each hold Certificates of Registration issued by the United States Copyright Office for their residential home designs known as "Home Design 2434" and "Georgetown II," respectively.[2] Country View, acting with the consent of Salyards, AGI (an architectural firm of whom Salyards is a principal), and Axelrod, created an advertising brochure to market the Georgetown II (the "Georgetown II Brochure"). The Georgetown II Brochure, which was not itself copyrighted, contains, *inter alia*, an artist's rendition of the copyrighted design of the home's exterior as well as a two-page floor plan for the copyrighted design of the interior of the home.

---

[1] Unless otherwise noted, the facts set forth herein are taken from the August 26 Order. The factual findings of the August 26 Order were based upon the facts stated in plaintiffs' Local Rule 56.1 Statement, which were deemed admitted (to the extent they were supported by the record) due to defendants' failure to file an appropriate Local Rule 56.1 Counterstatement. (*See* Aug. 26 Order at 2-3.) The Court presumes the reader's familiarity with the August 26 Order and, as such, sets forth only those facts necessary for resolution of the remaining issues identified by the Court.

[2] The Georgetown II is a derivative work of Home Design 2434.

Plaintiffs allege that defendants T&S (a builder of residential homes), Malguarnera (the president of T&S) and Red Barn (a limited liability company engaged in the construction of one-family dwellings) illegally copied the Georgetown II design for use in connection with the construction of four homes under the model name "the Franklin" on Long Island, without plaintiffs' permission.  It is undisputed that T&S used sales literature to market the Franklin model.  These advertisements contain a copy of the first page of the Georgetown II Brochure, displaying the exterior of the Georgetown II and actually referring to the Franklin as the Georgetown II, with the name "Country View" removed.

In addition, one of the Franklin flyers includes the two-page floor plan from the Georgetown II Brochure.  Another depicts a floor plan which is nearly identical to the floor plan for the Georgetown II, except for two modifications, i.e., the lavatory on the first floor in the Georgetown II is situated differently than in the Franklin, and the Georgetown II second floor plan includes one walk-in closet, while the Franklin plan calls for two.  Otherwise, the two floor plans are identical.

Defendants T&S and Red Barn[3] ultimately constructed four Franklin homes, three of which Defendants built and sold pursuant to three separate contracts of sale.  The fourth home was completed for Salvatore Malguarnera, Jr., the son of defendant Malguarnera.

### *The Amended Complaint*

Count I alleges that "Defendants designed, constructed, advertised, marketed and sold a [Franklin] home using the illegally duplicated Georgetown II Design" on Frog Pond Road in

---

[3]  Red Barn provides funds to T&S so that T&S can purchase land to build homes upon.

Huntington, New York. (Am. Compl. ¶ 35.) T&S entered into a contract of sale pursuant to which it agreed to build this home for Shah Yasofi and Naimh Sana. The contract includes an exact copy of the two-page floor plan for the Georgetown II, copied from the Georgetown II Brochure, with handwritten notations.

Count II alleges that "Defendants designed, constructed, advertised, marketed and sold a [Franklin] home using the illegally duplicated Georgetown II Design" on 19 Oak Run, Nesconset, New York. (*Id.* ¶ 44.) Red Barn entered into a contract of sale in which it agreed to build this home for Mark Berutich and Barbara Berutich. This contract also includes two attachments: the two-page floor plan taken right from the Georgetown II Brochure, and separate floor plans that included modifications to the Georgetown II design.

Count III alleges that "Defendants designed, constructed, advertised, marketed and sold a [Franklin] home using the illegally duplicated Georgetown II Design" on 21 Oak Run, Nesconset, New York. (*Id.* ¶ 53.) Red Barn entered into a contract in which it agreed to build this home for Phil D'Amelia. The contract includes a copy of the front page of the Georgetown II Brochure, displaying a picture of the exterior of the Georgetown II home, with the name "The Georgetown II" on it. Country View's name is blocked out, although its logo still appears. Attached to the contract were: (1) the two-page floor plan for the Georgetown II, which was copied from the Georgetown II Brochure but contains some handwritten additions, and (2) additional floor plans with modifications to the Georgetown II design.

Count V alleges that "Defendants design[ed], construct[ed], advertis[ed], market[ed] and offer[ed] for sale [a Franklin] home using the illegally duplicated Georgetown II Design" on Park Avenue, Huntington, New York. (*Id.* ¶ 71.) This house was first commissioned by William

4

Lauderbach, a prospective customer of T&S and the person who first provided T&S with the Franklin design. Defendants contend that the Franklin plans were drawn by Mr. Lauderbach's architect, Robert O'Shea. Shortly after the commencement of construction, however, Mr. Lauderbach cancelled the contract and the project was completed for Malguarnera's son. Thus, there is no contract of sale in connection with his home. However, the record does contain a photograph of the home showing an exterior that is substantially similar to that of the Georgetown II.

According to Louis Castellano ("Castellano"), a field supervisor for T&S, the "as built" plans for Malguarnera's son's home "show over thirty-[five] (35) modifications from the original plan. (*See* August 26 Order at 6 (quoting Castellano Aff., dated Oct. 23, 2007, ¶ 4).) During his deposition, Castellano testified that the modifications to each of the four Franklin homes were "options" that were requested "by the customers." (*Id.* at 7.) Castellano further testified that "[a]ll of the four homes constructed by the defendants under the model name 'Franklin' are substantially different from each other." (*See id.*)

Finally, Castellano claimed that "[i]t is a common practice in the construction industry to obtain copies of model brochures from competitors [but that] these brochures are used for reference only and it has never been the practice of the defendants to copy a competitor's model." (*Id.* ¶ 7.)

In connection with their original briefing, neither side proffered the as-built plans for any of the homes to the Court. The record did include, however, exterior photographs (the accuracy and authenticity of which were undisputed) of all four Franklin homes. In connection with their supplemental briefing, defendants submitted what purport to be "as built" plans for three of the

5

four houses, as discussed *infra*. (*See* Defs.' Oct. 2, 2008 Letter (not filed on ECF).)

### *The August 26 Order*

The Court began the August 26 Order by reviewing the elements necessary to establish a prima facie case of copyright infringement, in violation of the Copyright Act, 17 U.S.C. § 102(a), to wit: "'(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work.'" (Aug. 26 Order at 12 (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)).) As the parties did not dispute that Salyards obtained a valid copyright for Home Design 2434 or that Axelrod obtained a valid copyright for Georgetown II, only the second element of the prima facie case was at issue. (*Id.*)

To prove the second element, unauthorized copying of a copyrighted work, a plaintiff must show that: "(1) the defendant actually copied the plaintiff's work; and (2) the copying is illegal because a 'substantial similarity' exists between the defendant's work and the protectable elements of the plaintiff's work." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) (citations omitted). The Court found that plaintiffs had "direct evidence of copying," since it was "undisputed that Defendants attached Georgetown II sales literature, including pictures of the Georgetown II's exterior as well as its floor plans, to both Defendants' advertising flyers and to three contracts of sale for the Franklin." (August 26 Order at 14.) The Court further found that "[w]ith regard to the Franklin home for which there is no contract of sale, the evidence undisputedly indicates that Defendants used the Georgetown II design to design and market this home." (*Id.*) As such, plaintiffs established that defendants "actually copied Plaintiffs' architectural designs in their advertisements and contracts of sale." (*Id.*)

The Court found, therefore, that "summary judgment turns on the issue of substantial

similarity." (*Id.* at 14.)  Defendants argued that "there [was] a genuine issue of material fact as to whether the four Franklin homes were substantially similar to the Georgetown II because in their final form none of the four [Franklin homes] resembled the Georgetown II, nor indeed each other.'" (*Id.* at 15 (internal quotation marks and alteration omitted, alterations added).)  The Court concluded, however, that "Defendants' design is substantially similar to Plaintiffs' as embodied in Defendants' advertising flyers and contracts for sale." (*Id.*)  The Court also determined, after examining the photographs submitted by the parties, that "the exterior facades of the four Franklin homes are substantially similar to the exterior facades of the Georgetown II." (*Id.* at 15-16.)  However, based on the record before it, the Court was "unable to determine what modifications were in fact made to the interiors of the Franklin homes upon completion." (*Id.* at 16.)

      This created two additional questions that the parties had not addressed in their briefs.  Accordingly, the Court ordered supplemental briefing on the following two issues: (1) "[Given that] the case law instructs that in analyzing substantial similarity, the Court must look to the work as a whole, does that mean that Defendants' act of copying the exterior of the Georgetown II may not constitute an act of infringement if Defendants made substantial modifications to the interiors of the Franklin homes[?]" and (2) "[D]oes Defendants' use of the Georgetown II Brochure in its advertisements and contracts of sale, in and of itself, constitute an act of infringement under the Copyright Act[?]" (*Id.*)  The Court now addresses each of these issues in turn.

7

## DISCUSSION

**I.** *Defendants' Act of Copying of the Exterior of the Georgetown II is Sufficient to Constitute an Act of Copyright Infringement Even if the Interiors of the Franklin Homes Were not Substantially Similar to the Georgetown II Design*

"[T]he test for substantial similarity is the 'ordinary observer test,' which queries whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Hamil Am., Inc. v. GFI Inc.*, 193 F.3d 92, 100 (2d Cir. 1999) (citations omitted). In other words, the test asks "whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). A court must consider similarity in light of "the total concept and feel" of the works. *See Boisson v. Banain, Ltd.*, 273 F.3d 262, 275 (2d Cir. 2001); *see also Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, 2007 WL 708798, at *13 (E.D.N.Y. Mar. 6, 2007) ("The factfinder must look at the work as a whole without dissection."); *Shine v. Childs*, 382 F. Supp. 2d 602, 612 (S.D.N.Y. 2005) (noting that "total concept and feel" is the dominant standard by which courts in the Second Circuit evaluate similarity in copyright infringement cases).

Although the issue has not been addressed by the Second Circuit, numerous courts outside the Circuit have concluded that "[i]nfringement can be established on the basis of infringing either the floor plans or the exterior, or both." *Richmond Homes Mgmt., Inc. v. Raintree, Inc.*, 862 F. Supp. 1517, 1527 (W.D.Va. 1994) (applying the "ordinary observer test" as articulated by the Second Circuit to determine substantial similarity), *rev'd on other grounds*, 66 F.3d 316 (4th Cir. 1995) (collecting cases); *see also John Wieland Homes & Neighborhoods, Inc. v. Poovey*, 2004 WL 2108675, at *6 (W.D.N.C. Aug. 2, 2004) (same); *Bonner v. Dawson*, 2003

8

WL 22432941, at *5 (W.D.Va. Oct. 14, 2003) (granting summary judgment and concluding "[a]lthough there are certain differences between the two buildings such as the building's size, interior layout, exterior stripe color, and some window variations, the overall architectural concept and designs of each [of] the two buildings is overwhelmingly similar"). The underlying rationale for this legal proposition, which has also been applied by the Second Circuit in other contexts, is that "[i]t is not necessary to prove that every element of the [floor] plans or structure was copied; it is sufficient to show that a substantial part was copied." *Id.* (citing *Nikanov v. Simon & Schuster, Inc.*, 246 F.2d 501, 504 (2d Cir. 1957) ("While only a part of the plaintiff's copyrighted work was appropriated, what was taken was clearly material . . . .")). Here, the Court has already found a substantially similarity between the exteriors of the four Franklin homes at issue and the exterior of the Georgetown II. (Aug. 26 Order at 15-16.) Given this, the Court concludes that even if the evidence presented at trial demonstrated that the interiors of the Franklin homes as constructed were not substantially similar to the Georgetown II interior design, the Court's prior finding of a substantial similarity between the exterior designs necessarily leads to a conclusion that plaintiffs' copyrights were infringed.

Defendants devote much of their supplemental briefing to their assertion that, contrary to the Court's previous ruling, the exteriors of the Franklin homes are not substantially similar to the Georgetown II design (or to each other) and that "the 'similarity' or 'non-similarity' of the four houses are issues of fact which, it is respectfully submitted, cannot be determined on a motion for summary judgment." (Defs.' Opp'n at 9; *see also id.* at 4-5, 8.) The Court notes, as an initial matter, that defendants never asked the Court to revisit its ruling in the August 26 Order that "the exterior facades of the four Franklin homes are substantially similar to the exterior

9

facades of the Georgetown II, as evidenced by the photographs thereof." (August 26 Order at 15-16.)[4]

Even if the Court were inclined to consider defendants' argument in this regard, defendants have failed to raise any genuine issue of fact. As support for their assertion that the exterior of the Franklin homes are not substantially similar to the Georgetown II, defendants rely on several documents, submitted for the first time in connection with this supplemental briefing, that defendants' counsel describes as "as built" plans for three of the four Franklin houses.[5] These documents are not attached to any affidavit or declaration by anyone with personal knowledge that describes what they are or how they were created or maintained.[6] Plaintiffs dispute the accuracy and authenticity of these documents, noting that they "are not identified anywhere on their face as 'as-built drawings,'" and that they are not "marked up to reflect changes made during the construction process," as is typical of "as built" plans. (*See* Reply Mem. at 3-4.)[7]

---

[4] Moreover, the August 26 Order made clear that the Court required supplemental briefing on only the two issues delineated therein; nothing in the August 26 Order gave the impression that the Court intended the supplemental briefing to serve as a motion for reconsideration on this or any other issue.

[5] Incidentally, these documents were delivered to the Court via Federal Express, with a copy to plaintiffs' counsel, but were not posted to ECF. Defendants' counsel asserts that he has "no means by which [he] can electronically transmit" them via ECF. (Defs.' Oct. 2, 2008 Letter at 1.)

[6] Instead, they were submitted to the Court as enclosures to a cover letter from defendants' counsel, in which he states that his "clients have located 'as built' plans for three of the four houses built by the Defendants and are attempting to locate the plans for the fourth house." (Defs.' Oct. 2, 2008 Letter at 1.)

[7] Plaintiffs believe that "these drawings . . . were provided to the Smithtown and Huntington Town building departments, respectively, for permit approval." (Reply Mem. at 3-

"The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (citing Rule 56(e)). Thus, authentication "is a precondition to consideration of documentary evidence on summary judgment." *Jay Dees Inc. v. Def. Tech. Sys., Inc.*, 2008 WL 4501652, at *6 (S.D.N.Y. Sept. 30, 2008) (citing *Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 262 F. Supp. 2d 50, 59-60 (S.D.N.Y. 2003)). The authentication requirement may be satisfied by the proponent's production of "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The party proffering the evidence bears the burden of proving 'a rational basis for concluding that an exhibit is what it is claimed to be.'" *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992) (quoting *United States v. Hon*, 904 F.2d 803, 809 (2d Cir. 1990)). Here, defendants have failed to proffer any evidence, such as an affidavit from someone with knowledge that the drawings are, in fact, "as built" plans, *see* Fed. R. Evid. 901(b)(1), that provides any authentication of the documents in question. As such, these documents are inadmissible, and cannot be relied upon to create a question of fact. *See Jay Dees Inc.*, 2008 WL 4501652, at *7.

Accordingly, plaintiffs' motion for partial summary judgment based upon defendants' copying of the exterior of the Georgetown II design in the construction of the Franklin homes identified in Counts I, II, III, and V of the Amended Complaint is granted.

## II.  *Defendants' Copying of the Floor Plans Contained in the Georgetown II Brochure Constituted a Separate Act of Copyright Infringement*

Under the Copyright Act, "the owner of a copyright under this title has the exclusive

---

4.)

rights to do and to authorize any of the following: [ ] to reproduce the copyrighted work in copies. . .; [and] to distribute copies . . . of the copyrighted work to the public . . . ." 17 U.S.C. § 106; *see also* 17 U.S.C. § 102(a)(8) ("Copyright protection subsists . . . in original works of authorship . . . [including] architectural works."); 17 U.S.C. § 101 (defining "architectural work" to include "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings").

In the August 26 Order, the Court determined that defendants "attached Georgetown II sales literature, including pictures of the Georgetown II's exterior as well as its floor plans, to both Defendants' advertising flyers and to three contracts of sale for the Franklin." (August 26 Order at 14.)  Although the Georgetown II Brochure itself was not copyrighted, it stated that "all floor plans and elevations [contained therein] are copyrighted." (*See id.*)  The Court concludes that defendants' copying of plaintiffs' copyrighted floor plans from the Georgetown II Brochure for use in defendants' advertisements and contracts of sale for homes with substantially similar designs constituted copyright infringement. *See Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 897, 899 (5th Cir. 1972) (finding that the defendants' "reproduction of a floor plan from a copyrighted set of [plaintiffs'] architectural drawings in [plaintiffs'] advertising brochure" constituted copyright infringement); *see also Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 904-05 (11th Cir. 1986) (upholding trial court's finding of copyright infringement when the defendants copied the plaintiffs' copyrighted floor plans from the plaintiffs' promotional brochures); *Arthur Rutenberg Corp. v. Parrino*, 664 F. Supp. 479, 481 (M.D.Fla. 1987) (finding copyright protection extends to copies of floor plans contained in sales brochure, even when brochure itself was unregistered); *Herman Frankel Org. v. Tegman*, 367 F.

Supp. 1051, 1053-54 (E.D.Mich. 1973) (granting summary judgment to plaintiff as to the defendants' liability for their act of copying the plaintiff's "copyrighted floor plan contained in the plaintiff's selectively distributed brochure" as part of the defendants' "prepar[ation] for a residence substantially similar to the plaintiff's [ ] model home").

Defendants argue, without citation to case law, that their use of plaintiffs' copyrighted material in the contracts of sale "was done [only] for the purpose of depicting a general appearance" and "[n]one of the four houses constructed match the Georgetown II design exactly in either interior or exterior configuration." (Defs.' Opp'n at 6.) This argument, of course, does not address defendants' use of plaintiffs' copyrighted floor plans in defendants' advertising material. And, as discussed *supra*, the Court has already found the exterior of the Franklin homes to be substantially similar to the Georgetown II. In any event, defendants have failed to explain why purported modifications made to the designs during the homes' construction absolve defendants of liability for improperly using plaintiffs' copyrighted floor plans in the sales contracts. *Accord Chirco v. Gateway Oaks, LLC*, 2005 WL 1355482, at *7 (E.D.Mich. Apr. 29, 2005) ("[T]he construction of a structure, based upon copyrighted architectural plans, does not destroy one's ability to separately enforce and protect one's rights in the architectural plans themselves.").

## *CONCLUSION*

For the reasons set forth above, plaintiffs' motion for partial summary judgment is granted as to defendants' liability under Counts I, II, III, and V of the Amended Complaint. Magistrate Judge Arlene R. Lindsay has reviewed the parties' proposed Joint Pretrial Order and certified the case as trial ready.  (*See* Nov. 26, 2008 Order.)  Judge Lindsay has directed the parties to contact her within ten days of the date of this Order to, *inter alia*, inform her whether they believe a settlement conference would be fruitful.  If this case cannot be settled, the parties are directed to inform this Court so that a final pretrial conference may be scheduled.

**SO ORDERED.**

Dated: Central Islip, New York
       May 2, 2013                                     /s/
                                                      Denis R. Hurley
                                                      Unites States District Judge